FILED

2014 Feb-14  AM 08:42
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | | |
|---|---|---|
| PAM S. REUTER, | ) | |
| | ) | |
| Plaintiff; | ) | |
| | ) | |
| vs. | ) | 5:11-cv-01540-LSC |
| | ) | |
| SOCIAL SECURITY | ) | |
| ADMINISTRATION, | ) | |
| COMMISSIONER | ) | |
| | ) | |
| Defendant. | ) | |

MEMORANDUM OF OPINION

## I.    Introduction

The plaintiff, Pam S. Reuter ("Reuter"), appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for a period of disability, Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI"). Reuter timely pursued and exhausted her administrative remedies, and the decision of the Commissioner is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

Reuter was forty-seven years old at the time of the Administrative Law Judge's ("ALJ's") decision, and she has a limited education. (Tr. at 25.) Her past work

experiences include employment as a kitchen helper, sales clerk in retail, cook, and sock bander. (*Id.*) Reuter contends that she became disabled on April 1, 2004, due to problems with her feet and back. (Tr. at 157.)

When evaluating the disability of individuals over the age of eighteen, the regulations prescribe a five-step sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920; *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). The first step requires a determination of whether the claimant is "doing substantial gainful activity." 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If he or she is, the claimant is not disabled and the evaluation stops. *Id.* If he or she is not, the Commissioner next considers the effect of all of the physical and mental impairments combined. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). These impairments must be severe and must meet the durational requirements before a claimant will be found to be disabled. *Id.* The decision depends on the medical evidence in the record. *See Hart v. Finch*, 440 F.2d 1340, 1341 (5th Cir. 1971). If the claimant's impairments are not severe, the analysis stops. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). Otherwise, the analysis continues to step three, which is a determination of whether the claimant's impairments meet or equal the severity of an impairment listed in 20 C.F.R. pt. 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii),

416.920(a)(4)(iii). If the claimant's impairments fall within this category, he or she will be found disabled without further consideration. *Id.* If they do not, a determination of the claimant's residual functional capacity ("RFC") will be made and the analysis proceeds to the fourth step. 20 C.F.R. §§ 404.1520(e), 416.920(e).

The fourth step requires a determination of whether the claimant's impairments prevent him or her from returning to past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant can still do his or her past relevant work, the claimant is not disabled and the evaluation stops. *Id.* If the claimant cannot do past relevant work, then the analysis proceeds to the fifth step. *Id.* Step five requires the court to consider the claimant's RFC, as well as the claimant's age, education, and past work experience in order to determine if he or she can do other work. 20 C.F.R. §§ 404.1520(a)(4)(v) 416.920(a)(4)(v). If the claimant can do other work, the claimant is not disabled. *Id.*

Applying the sequential evaluation process, the ALJ found that Reuter met the insured status requirements of the Social Security Act through June 30, 2006. (Tr. at 17.) He further determined that Reuter has not engaged in substantial gainful activity since the alleged onset of her disability. (*Id.*) The ALJ also identified the following impairments as "severe" based on the regulations: "post plantar fascitis of the left

foot right paracentral, degenerative disc changes in the lumbar spine, herniated nucleus pulous at L4-5 with right L5 radiculopathy, incidental prolapse at L2-3 , and an annular tear at L5-S1." (*Id.*) However, he determined that Reuter's impairments alone or in combination did not meet or medically equal any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. at 19.) The ALJ did not find Reuter's allegations to be totally credible, and he determined that she has the residual capacity "to perform light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b) with a sit/stand option." (*Id.*)

According to the ALJ, Reuter cannot perform any past relevant work, she is a "younger individual," and she has a "limited education," as those terms are defined by the regulations. (Tr. at 25.) He further determined that "[t]ransferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is 'not disabled,' whether or not the claimant has transferable job skills." (*Id.*) Instead, he considered Reuter's age, education, work experience, and residual functional capacity, and found that she could perform various jobs that exist in significant numbers in the national economy. (*Id.*) Although Reuter could not perform the full range of light work, she could perform various jobs, including garment sorter and mail sorter. (Tr. at 26.) The

ALJ thus concluded that Reuter was not under a disability from April 1, 2004, through the date of his decision. (*Id.*)

## II.    Standard of Review

This Court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of its review is limited to determining (1) whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and (2) whether the correct legal standards were applied. *See Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). The Court approaches the factual findings of the Commissioner with deference, but applies close scrutiny to the legal conclusions. *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). The Court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner. *Id.* "The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" *Parker v. Bowen*, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)). Indeed, even if this Court finds that the evidence preponderates against

the Commissioner's decision, the Court must affirm if the decision is supported by substantial evidence. *Miles*, 84 F.3d at 1400. No decision is automatic, however, for "despite this deferential standard [for review of claims] it is imperative that the Court scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987). Moreover, failure to apply the correct legal standards is grounds for reversal. *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

## III.   Discussion

Reuter contends that the ALJ's decision should be reversed for three reasons—the ALJ improperly weighed the opinions of her physicians, gave insufficient credit to her subjective complaints of pain, and posed an incomplete hypothetical question to the Vocational Expert ("VE"). The Court examines each objection in turn.

### A.   Treating Physician Opinions

A treating physician's opinion is entitled to "substantial or considerable weight unless 'good cause' is shown to the contrary." *Crawford v. Commissioner of Social Security*, 363 F.3d 1155, 1159 (11th Cir. 2004) (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997) (internal quotations omitted)). The weight to be afforded a medical opinion regarding the nature and severity of a claimant's impairments

depends, among other things, upon the examining and treating relationship the medical source had with the claimant, the evidence the medical source presents to support the opinion, how consistent the opinion is with the record as a whole, and the specialty of the medical source. *See* 20 C.F.R. § 404.1527(d). Reuter contends that the ALJ improperly rejected the opinions of three treating physicians— Dr. John Lary ("Lary"), Dr. Calame Sammons ("Sammons"), and Dr. Bart Bailey ("Bailey").

The ALJ considered the opinions of both Lary and Sammons in his opinion. He noted the findings of both physicians when determining Reuter's "severe" impairments. (Tr. at 18-19.) When the ALJ evaluated Reuter's RFC, he again referenced Lary's opinion as follows: "The opinion of Dr. Lary in Exhibit 5F was also considered. The undersigned gave the claimant the benefit of the doubt with a sit/stand option and provided for any functional limitations with the residual functional capacity determined above." (Tr. at 22.) Although Reuter characterizes the ALJ's decision as assigning inappropriate weight to these physicians, the issue is actually whether there was substantial evidence to support his determination that their findings did not establish a disability. *See Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1159 (11th Cir. 2004).

Here, the ALJ extensively considered Lary's December 17, 2007, examination.

Lary noted that an MRI from January 2007 "reportedly showed that [Reuter's] central canal is widely patent at all levels, and that there is no significant disc herniation." (Tr. at 226.) Moreover, he recorded that Reuter "does not use a cane, crutches, a walker, a wheelchair, or other assistive devices." (Tr. at 227.) He noted that Reuter previously had a normal lumbar spine physical examination, but he also recorded Reuter's complaints of pain in her neck, right ankle, left heel, and back. (*Id.*) Lary's examination revealed a "frozen right ankle" and that she was "[a]ble to walk with a limp." (Tr. at 229.) However, he also found that she was able to "assume and arise from a semi-squat position" and "able to assume and arise from a kneeling position, but uses both arms to push herself upright." (*Id.*) Lary documented normal deep tendon reflexes, no areas of anesthesia or paresthesia, ability to balance, 5/5 muscle strength in all muscle groups, and sensation to vibration and cold. (*Id.*)  He concluded: "In my opinion, her ability to sit, stand, walk, lift, carry, bend, and squat is impaired. Her ability to reach overhead is impaired. Her ability to see, hear, speak, understand, and manipulate small objects is unimpaired." (Tr. at 230.) The report did not identify specific restrictions on her activities.

The ALJ documented these findings when considering the severity of her impairments and the effects of these impairments on her ability to work. (Tr. at 18, 20,

22.) Moreover, while Lary did note that Reuter had impairments, he noted no restrictions on her ability to work or engage in the functions of daily life. *Cf. Broughton v. Heckler*, 776 F.2d 960, 961 (11th Cir. 1985) (noting that an ALJ failed to give good cause for discrediting a treating physician who found that the claimant was unable to perform his former job and was likely unable to be trained in new sedentary work). Here, there is substantial evidence to support the ALJ's determination that Lary's observations do not warrant a finding of disability. *See Crawford*, 363 F.3d at 1159.

Similarly, Sammons observed Reuter on August 11, 2008. (Tr. at 408.) Sammons noted that Reuter "is a pleasant white female in moderate discomfort" and observed that "[s]he has a positive straight leg raise at 40 degrees." (*Id.*) The physical exam also revealed that Reuter "has some slight weakness of her anterior tib although [she] is feeling more pain than I think true weakness. She has a mildly positive contralateral straight leg raise. Ely's and femoral stretch are not tolerated because of her back pain." (*Id.*) Ultimately, Sammons concluded that "I think the patient's symptoms warrant a lumbar microdiskectomy." (Tr. at 409.) Reuter never had the surgery. (Tr. at 19.)

The ALJ considered Sammons's evaluation as part of his analysis of Reuter's treatment at the Orthopaedic Center. (Tr. at 19.) Reuter was first seen by Dr.

Christopher Palmer at the Orthopaedic Center in 2005. Palmer noted that she had a "healed fracture with hardware that shows no evidence of any loosening." (Tr. at 401.) He observed that she had "no significant antalgia in her gait" and had "relatively full ROM with no significant crepitus." (*Id.*) In July 2005, Dr. Philip Maddox evaluated Reuter and found that she had "some tenderness" but also found an x-ray of her left heel to be normal and found that her left ankle "had an open reduction and internal fixation of a lateral malleolar fracture which is healed." (Tr. at 404.)

As with Lary, neither Sammons nor the other physicians at the Orthopaedic Center referenced restrictions to her ability to work. Moreover, from their treatment notes the ALJ could conclude that although Reuter had some limitations, she was able to work. *See Crawford*, 363 F.3d at 1159. Moreover, even though Sammons recommended that Reuter have surgery, she never had the operation. The ALJ also gave great weight to the opinion of Dr. Frank Nuckols ("Nuckols") "who determined the claimant had no severe mental impairment." (Tr. at 22.) Nuckols concluded that Reuter did have some anxiety, but this was not severe. (Tr. at 242-247.) The ALJ also considered the evaluations of several other treating physicians who found that Reuter was amenable to conservative treatment measures. (Tr. at 17-18.) Thus, the ALJ had

substantial evidence to conclude that the records of Sammons and Lary corroborated these other treatment records and thus also had substantial evidence to find that Reuter was not disabled under the Social Security Act. *See Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) ("Our standard of review is, as it is for the district court, whether the ALJ's conclusion as a whole was supported by substantial evidence in the record.")

However, the ALJ did reject Bailey's opinion, and the Court must determine whether there was good cause to do so. *See Crawford*, 363 F.3d at 1159. "Good cause" exists to reject a treating physician's opinion when the: "(1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004). "When electing to disregard the opinion of a treating physician, the ALJ must clearly articulate its reasons." *Id.* Although the ALJ must explain its rationale, the Court must remain mindful that "credibility determinations are the province of the ALJ." *Moore v. Barnhart*, 405 F.3d 1208, 1212 (11th Cir. 2005).

Here, Bailey's "Clinical Assessment of Pain" form was conclusory in nature. The three-page form contained four multiple-choice questions where the physician

selected a response and a short assessment of work limitations. (Tr. at 264-266.) Bailey selected responses indicating that Reuter's pain would be "distracting to adequate performance" of work activities, would "cause distraction from tasks or total abandonment of tasks," and that she had an underlying medical condition consistent with the pain she experiences. (Tr. at 264-265.) Furthermore, Bailey indicated that pain medication may cause side effects "but not to such a degree as to create serious problems in most instances." (Tr. at 264.) After assessing the pain, Bailey indicated that Reuter would need to lie down during the day and would miss 2-3 days of work per month. Some notes on the letterhead of Dr. Alan J. Wayne were attached along with an MRI from January 17, 2008. (Tr. at 267-269.) However, these notes only indicate that she was complaining of pain, had taken various medications, and "has signed up for disability." (Tr. at 267.) The attached MRI noted that there was mild concentric bulging at C5-6 and C6-7, but there "is no evidence of significant disc space narrowing." (Tr. at 269.) There was also a normal cord signal, intact craniovertebral junction, and no evidence of canal stenosis. (*Id.*) The form itself contained no reference to any treatment notes or any indication as to the evidence Bailey considered when weighing these factors, and the accompanying paperwork did not support the selected responses. Thus, the form could be disregarded as

conclusory. *See Moore*, 405 F.3d at 1212 (noting that the court could not re-weigh the evidence when the ALJ discounted an opinion "prepared on a short form used to support [the claimant's] food stamp eligibility").

As discussed above, the ALJ also considered at length other physicians who evaluated Reuter over the various years that she alleged disability. Although the other physicians also found that she had some limitations, none stated that she was unable to work.  Thus, the ALJ had good cause to reject Bailey's opinion.

Finally, Reuter contends that the ALJ should have attempted to recontact Bailey. The duty to recontact a treating physician stems from the ALJ's "'basic obligation to develop a full and fair record.'" *Couch v. Astrue*, 267 F. App'x 853, 855 (11th Cir. 2008) (quoting *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997)). However, an ALJ is not required to "order more evidence where the record is sufficient to establish whether the claimant is disabled." *Jones v. Astrue*, 691 F.3d 730, 733 (5th Cir. 2012).

As in *Jones*, the treating physician submitted a conclusory checklist indicating that the claimant suffered from disabling impairments, and the ALJ dismissed the checklist as conclusory and unsupported by the evidence. *Id.* The Fifth Circuit concluded that evidence in the record "from other treating sources can suffice to

allow the ALJ to determine whether the claimant is disabled." *Id.* Here, the ALJ considered the existing record, as the Court has already described at length. Moreover, there is no indication that there were any gaps in the evidentiary record that would be favorable to Reuter. *See Couch*, 267 F. App'x at 855 (quoting *Brown v. Shalala*, 44 F.3d 931, 935 (11th Cir. 1995), *and Jones*, 591 F.3d at 734 (noting that even if there had been a duty to recontact, any error was harmless because the claimant offered no evidence that additional records would have affected the judgment). Thus, the ALJ properly evaluated the medical record and properly weighed the opinions of Reuter's treating physicians.[1]

## B.   Complaints of Pain

Disability benefits may not be paid solely on the basis of a claimant's own self-serving complaints. See: 42 U.S.C §§ 423 (d)(5)(A), 1382c (a)(3)(H)(I) ("An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Commissioner of Social Security may require An individual's statement as to pain and other symptoms shall

---

[1] Reuter contended that the ALJ improperly gave weight to a state agency consultant when determining her residual functional capacity. (Doc. 8 at 16.) Non-examining physicians are generally entitled little weight and do not satisfy the substantial evidence requirement standing alone. *Swindle v. Sullivan*, 914 F.2d 222, 226 n. 3 (11th Cir. 1990). However, the ALJ explicitly noted that he considered the state agency consultant's opinion on residual functional capacity, but "it is accorded no weight as it is not the opinion of a medical source." (Tr. at 22.)

not alone be conclusive evidence of disability.") However, subjective testimony of pain and other symptoms may establish the presence of a disabling impairment if it is supported by medical evidence. *See Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995). To establish disability based upon pain and other subjective symptoms, "[t]he pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (*citing Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991)).

Here, the ALJ determined that Reuter presented evidence of underlying medical conditions but failed to satisfy either the second or third element. (Tr. at 23.) There was substantial evidence in the medical record to rebut Reuter's "allegations of severe and chronic pain and limitation of function to the degree that it would preclude the performance of all substantial gainful activity." (*Id.*) Lary found that Reuter's abilities to sit, stand, walk, lift, carry, bend, and squat were impaired but also noted that she could walk without assistance and had 5/5 strength in all muscle groups. (Tr. at 229-230.) Similarly, Dr. Morris Seymour ("Seymour") examined

Reuter on February 13, 2007, and noted that although she had "some pain" in her hip, she had "[n]o radicular symptoms" and "[n]o paresthesias." (Tr. at 191.) He also noted: "Exhibits average muscle development and erect posture. Gait is grossly normal. Spine is without signs of trauma, masses, unusual hair or pigment. No lymphadenopathy is noted. No surgical scars are noted. No deformity is noted of the shoulders, pelvis, knees, ankles, and feet." (*Id.*) Seymour found that her back issues "should be amenable to conservative measures." (Tr. at 292.)

The ALJ incorporated these evaluations into his findings, noting that "the evidence suggests the claimant is limited but is able to perform at least some type of work activity, and in this case, work of a light exertional level." (Tr. at 25.) Thus, there was substantial evidence in the medical record to support the ALJ's decision. *See May v. Comm'r of Soc. Sec.*, 226 F. App'x 955, 958 (11th Cir. 2007) (noting that the ALJ properly examined the medical evidence and partially discredited the claimant's complaints under the pain standard).

In addition to the medical evidence, the ALJ also weighed subjective factors that could indicate severe pain. *See Watson v. Heckler*, 738 F.2d 1169, 1173 (11th Cir. 1984) (noting that the ALJ could consider failure to seek medical treatment, daily activities from the hearing, and demeanor at the hearing). The ALJ noted that Reuter had not

pursued treatment for some twelve months. (Tr. at 24.) These gaps in treatment may be considered when assessing credibility. *See Sheldon v. Astrue*, 268 F. App'x 871, 872 (11th Cir. 2008) (citing *Watson*, 738 F.2d at 1173). He also emphasized that she drives a car, which requires concentration, use of both hands, and operation of hand and foot controls. (Tr. at 24.) Reuter also testified that she could lift five to ten pounds, raises her minor daughter, and performs household chores. (Tr. at 24-25.) He also acknowledged that Reuter sometimes sleeps during the day. (Tr. at 22.) A claimant's admission that she participates in daily activities for some duration does not disqualify her from receiving disability but must also be considered by the ALJ in assessing credibility. *May*, 226 F. App'x at 959. He also noted that there were significant periods in the record where Reuter was not taking pain medication at all. (Tr. at 20-21.) A claimant's lack of medication is also a factor that weighs against her credibility. *See Jarrell v. Comm'r of Soc. Sec.*, 433 F. App'x 812, 814 (11th Cir. 2011).[2]

Finally, the ALJ considered Reuter's "generally unpersuasive appearance and demeanor while [she] testified at the hearing." (Tr. at 24.) Specifically, the ALJ noted

---

[2] On this point, Reuter notes that "it can equally be inferred that [she] has no means with which to purchase medication or obtain medical attention." (Doc. 8 at 12.) It is true that poverty excuses noncompliance in seeking medical treatment. *Dawkins v. Bowen*, 848 F.2d 1211, 1213 (11th Cir. 1988). However, in *Dawkins* the claimant presented evidence that she could not afford medication. *Id*. Here, Reuter's attorney has simply speculated that her "economic status and familial" obligations make her unable to pay for surgery or medication without indicating facts from the record that would suggest that she is unable to afford any medication. (Doc. 8 at 13.)

that she does not use an ambulatory device, drives a car, and did not appear to be in discomfort during the hearing. (*Id.*) Although the ALJ considered this, he acknowledged that the hearing was of limited duration and was not a conclusive indicator of her disability, giving it only slight weight. (*Id.*) Reuter contends that this is an exercise of impermissible "sit and squirm" jurisprudence. *See Wilson v. Heckler*, 734 F.2d 513, 518 (11th Cir. 1984) (finding that the ALJ improperly applied a "sit and squirm" test when he concluded that the claimant did not appear to be in pain at the hearing and noted that the claimant did not need all the medication prescribed to him).

However, the ALJ can consider a claimant's appearance and demeanor at the hearing when making a determination on credibility. *Macia v. Bowen*, 829 F.2d 1009, 1011 (11th Cir. 1987). Still, "an ALJ must not impose his observations *in lieu* of a consideration of the medical evidence presented." *Norris v. Heckler*, 760 F.2d 1154, 1158 (11th Cir. 1985) (emphasis added). Here, as in *Norris*, "the ALJ explained that he considered the objective medical evidence and [the claimant's] testimony." *Id.* Thus, the ALJ properly discredited Reuter's subjective complaints of pain.

## C.    Hypothetical Question to the Vocational Expert

Reuter also contends that the ALJ improperly relied on the Vocational Expert's ("VE") testimony because the VE's testimony was based on invalid hypothetical

questions. (Doc. 8 at 18.) "'In order for a vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments.'" *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180 (11th Cir. 2011) (quoting *Wilson v. Barnhart*, 284 F.3d 1219, 1227 (11th Cir. 2002)). However, the ALJ's hypothetical need not reference symptoms that the claimant "alleged to suffer but were either not supported by her medical records or were alleviated by medication." *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1270 (11th Cir. 2007). Here, Reuter's arguments are based on the ALJ's decision not to incorporate Bailey's testimony and a supposed misreading of Lary's testimony. However, as the Court discussed in Part III(A), *supra*, there is substantial evidence to support the ALJ's decision on the medical evidence. Thus, Reuter's argument that the ALJ should have incorporated these diagnoses into the hypothetical questions is without merit.

## IV.   Conclusion

Upon review of the entire record, and considering all of Reuter's arguments, the Court finds the Commissioner's decision is supported by substantial evidence and in accord with the applicable law. A separate order will be entered.

Done this 14th day of February 2014.

_____
L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE

174256